UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KENNETH W. STEWART, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:09-0021 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| MARK KING, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court are a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) filed by defendant Claribelle C. Dela Cruz (Docket No. 89) and a Motion for Leave to File Second Amended Complaint filed by the plaintiff Kenneth Stewart (Docket No. 92). For the reasons discussed herein, the plaintiff's motion will be granted and the defendant's motion will be denied as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a Section 1983 action in which the plaintiff claims that his constitutional rights were violated by several individuals responsible for his medical care and safety. The plaintiff is an inmate at North East Correctional Complex in Mountain City, Tennessee.[1] The plaintiff is a double amputee (left leg and right eye) and suffers from diabetes, Hepatitis C, and spinal arthritis. The plaintiff, therefore, refers to himself as a "chronic care patient." Due to his various

---

[1]Unless otherwise noted, the facts are drawn from the plaintiff's First Amended Complaint (Docket No. 62).

1

health problems, the plaintiff has been regularly treated at Lois DeBerry Special Needs Facility (DSNF) in Nashville, Tennessee, since his incarceration in 1990. This case arises from treatment the plaintiff received at DSNF in the summer of 2008.

At that time, the plaintiff was receiving post-operative care at DSNF for a venous stasis ulcer that the plaintiff had on his right leg, which was apparently caused by his diabetes. This ulcer (or wound) apparently needed relatively frequent ointment applications, along with frequent bandaging and dressing, in order to allow it to heal and remain free from infection. The plaintiff, apparently unsatisfied with the level of care that he was receiving at DSNF, filed four grievances in June and July 2008 regarding the post-operative care that he was receiving. The plaintiff implies that his willingness to file grievances turned the nursing staff and others at DSNF against him.

Indeed, the plaintiff alleges that, at 3 p.m. on August 3, 2008, defendant Aletia Graham, a nurse at DSNF, entered his cell to change his bandage and to dress his wound. After Graham took the old bandage and dressing off of the wound, the plaintiff alleges that Graham went looking for wound ointment on the cart just outside of the cell. The plaintiff maintains that he told Graham where on the cart the ointment was located, but Graham ignored the plaintiff and went off, she claimed, to locate more ointment. This concerned the plaintiff because, as he attempted to tell Graham at the time, leaving the wound exposed subjected him to a high risk of infection.

When ten minutes passed without Graham's return, the plaintiff called for Graham by using the intercom in his cell. The call was answered by defendant Dela Cruz, who was also a nurse on duty at DSNF. Dela Cruz informed the plaintiff that Graham had gone on break. The

2

plaintiff alleges that, at this point, he explained to Dela Cruz that his wound was exposed and that he needed a nursing supervisor. The plaintiff claims that 30 more minutes passed without anyone returning to his cell to dress his wound. At that time, the plaintiff rang his intercom again, and he got defendant Graham on the line, but she "deliberately refused" to help. The First Amended Complaint makes no more substantive allegations regarding defendant Dela Cruz.

In the proposed Second Amended Complaint, which was filed in response to Dela Cruz's pending Motion for Judgment on the Pleadings, the plaintiff expands his allegations against Dela Cruz. The plaintiff alleges that, along with Graham, "[Dela] Cruz deliberately refused to replace his wound ointment and bandage, refused to answer repeated intercom calls and then turned his intercom off" for the remainder of her shift. (Docket No. 92 Ex. 1 at 5.) Further, the plaintiff alleges that the inmate in the next cell, Joshua Bateman, attempted to talk to Dela Cruz about the seriousness of the plaintiff's condition, but, the plaintiff alleges, Dela Cruz told Bateman "to mind his own business" and then, subsequently, Bateman's intercom was turned off. (*Id.*) In the proposed Second Amended Complaint, the plaintiff alleges that Dela Cruz "had the opportunity and obligation to assist Plaintiff in this medical emergency and deliberately refused to treat him or ensure that someone else treated him." (*Id.*)

For the remainder of the allegations, the First Amended Complaint and the Second Amended Complaint are essentially identical. The plaintiff alleges that, despite repeated subsequent attempts to ring the nurses on duty (Graham and Dela Cruz), the intercom was not answered until about 6 p.m., when the nursing shift changed. Still, the plaintiff alleges, he did not receive dressing for the wound until 7 p.m., and, at that time, the nursing staff made him dress the wound himself. The plaintiff claims that, within a few days, he was very sick. While

3

his medical treatment was subject to a series of delays, the plaintiff alleges that subsequent visits with his doctors over the next few weeks revealed that he had developed "multiple life threatening blood infections," which created a "severe risk" of amputation or death and required six months of "high powered intravenous antibiotics." The plaintiff alleges that, over this six months of treatment, he continued to be mistreated by the nurses at DSNF and others responsible for his care. All of this mistreatment, the plaintiff claims, has resulted in permanent physical and neurological injuries.

The plaintiff filed his *pro se* Complaint on December 31, 2008, and this case was referred to Magistrate Judge Knowles. (Docket Nos. 1, 4.) After the plaintiff filed a litany of motions seeking, among other things, sanctions and emergency intervention, Judge Knowles denied those motions and appointed counsel for the plaintiff. (Docket No. 36.) In response to the appointment of counsel, the court vacated the referral order. (Docket No. 81.) Plaintiff's counsel filed an Amended Complaint on July 7, 2009, and, in response to the sparse allegations against her therein, defendant Dela Cruz moved for Judgment on the Pleadings on February 3, 2010. (Docket No. 89.) On February 15, 2010, the plaintiff filed the Motion for Leave to Amend. (Docket No. 92.) That same day, the plaintiff filed a motion, which the court granted, permitting the plaintiff an extension of time until after the court ruled on the Motion for Leave to Amend to respond to the Motion for Judgment on the Pleadings. (Docket Nos. 91, 93.)

## ANALYSIS

The plaintiff brings this suit under 42 U.S.C. § 1983, alleging that the defendants' actions violated his rights under the First and Eighth Amendments to the Constitution.[2] Challenging the

---

[2] The basis of the First Amendment claim, if any, against defendant Dela Cruz is not well developed in this round of briefing.

sufficiency of the First Amended Complaint, defendant Dela Cruz has moved for Judgment on the Pleadings, and the plaintiff has moved for leave to amend his Complaint to clarify and expand the allegations against defendant Dela Cruz.

## I.     Motion for Leave to Amend

While the plaintiff does not explain the basis for the omissions, he concedes that his "First Amended Complaint lacks thorough factual allegations against Defendant Dela Cruz." (Docket No. 92 at 1.)   That is, while the First Amended Complaint indicates only that Dela Cruz may not have alerted a nursing supervisor to the plaintiff's needs, the Second Amended Complaint would allege that Dela Cruz "was aware of plaintiff's pleas for help" through conversations with the plaintiff and Bateman, that she "made a deliberate decision not to assist the plaintiff when he was in a medical emergency," and, in callous furtherance of this decision, she, along with Graham, deliberately disabled the plaintiff's and Bateman's intercoms.  (*Id.* at 1-2.)

The plaintiff cites no law in support of his Motion for Leave to Amend, only noting that the current Case Management Order does not preclude such an amendment and arguing that Federal Rule of Civil Procedure 15 and "Justice require that leave to file a Second Amended Complaint be granted."  (*Id.* at 1; *see also* Docket No. 88 at 4.)

Where, as here, leave from the court is required before a pleading may be amended, the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The district court has substantial discretion in ruling on a motion for leave, and "district courts can exercise their discretion to deny a motion for leave to amend based on undue delay, bad faith or dilatory motive or futility of amendment."  *Pedreira v. Ky. Baptist Homes for Children*, 579 F.3d 722,

5

729 (6th Cir. 2009)(internal quotation omitted). Additionally, to deny a motion for leave based solely upon "delay," the court must find that the defendant has shown "significant" prejudice flowing from the delay. *Prater v. Ohio Educational Association*, 505 F.3d 437, 445 (6th Cir. 2007).

In opposing the plaintiff's motion, defendant Dela Cruz's primary argument is that the proposed amendment is futile, that is, the plaintiff's Section 1983 claim against Dela Cruz fails in the face of Dela Cruz's Motion for Judgment on the Pleadings on either version of the Complaint. (Docket No. 94 Ex. 1 at 2-5.) A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed under essentially the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6), that is, the motion should not be granted unless, taking all of the plaintiff's well-pleaded material allegations as true, the defendant is nevertheless "clearly entitled" to judgment. *Fritz v. Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Dela Cruz claims that, while the allegations against her in the proposed Second Amended Complaint are more lengthy than those in the First Amended Complaint, the additional allegations "do not do anything except add a little bit of 'flesh on the bones' to the prior allegations in the First Amended Complaint [and] [s]ubstantively, these allegations do not change anything in this case." (Docket No. 94 at 3.)

In this context, a prisoner has stated a cause of action under Section 1983 where he alleges that a prison authority (including medical personnel who work for the prison) "have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009)(internal quotation omitted).

6

In making this allegation, the plaintiff must state facts sufficient to allege that the prison official acted with deliberate indifference. *Id.* "The inquiry into whether a prison official acted with deliberate indifference has both an objective and subjective component." *Id.* That is, on an objective level, the plaintiff must allege that the medical condition at issue was "sufficiently serious" and also, on a subjective level, the plaintiff must allege facts that show that "the official acted with reckless disregard for a substantial risk to the prisoner." *Id.*

In light of these standards, the defendant's contention that the amendment would be futile is without merit. In the First Amended Complaint, the allegations against Dela Cruz are only that she answered the intercom, told the plaintiff that Graham was on break, and heard the plaintiff state that his wound was exposed and that he needed a nursing supervisor. (Docket No. 62 at 4-5.) That is, on a basic level, there is nothing in the First Amended Complaint to suggest that Dela Cruz denied a reasonable request for medical treatment, let alone any allegations sufficient to state that Dela Cruz acted with the requisite state of mind.

In the proposed Second Amended Complaint, however, the plaintiff alleges that Dela Cruz worked with Graham to deny the plaintiff urgent medical care. The proposed Second Amended Complaint alleges that Dela Cruz was aware, through discussions with both the plaintiff and Bateman, that the plaintiff was in significant distress and needed urgent attention. Yet, despite being in the position to address the plaintiff's distress, Dela Cruz "deliberately refused" to assist the plaintiff, conveying this position, in part, by telling Bateman that the matter was none of his business. (Docket No. 92 Ex. 2 at 5.) Additionally, the Second Amended Complaint alleges that Dela Cruz "refused to answer" the plaintiff's "repeated intercom calls" and, together, Dela Cruz and Graham turned off the plaintiff's and Bateman's intercoms, leaving

7

the plaintiff without a way to communicate his urgent needs to the nurses. (*Id.*)

Taking all of these allegations as true, it is clear that, under the proposed Second Amended Complaint, Dela Cruz would not be "clearly entitled" to judgment on the Section 1983 claim. That is, with supporting facts, the plaintiff has alleged that Dela Cruz denied repeated "reasonable requests for medical treatment in the face of an obvious need for such attention," thereby exposing the plaintiff to undue suffering and the threat of residual injury. Indeed, the well-pleaded allegation essentially is that Dela Cruz and Graham simply did not wish to be bothered with the urgent needs of the plaintiff, and, therefore, they simply ignored his requests, going so far as to turn off his intercom, leaving him to suffer in panic and acquire an infection. A clearer allegation of deliberate indifference would be difficult to find, and, therefore, the plaintiff's Motion for Leave to Amend is not futile.

The defendant also contends that she would be unfairly prejudiced, in light of the plaintiff's delay, if the court allowed the plaintiff to amend his Complaint. (Docket No. 94 Ex. 1 at 1-2.) The defendant points out that this case proceeded for more than a year on the limited allegations against Dela Cruz, and, on those allegations, the plaintiff's deposition was conducted in October 2009. (*Id.*) Moreover, the plaintiff's status as a prisoner usually housed in East Tennessee made arranging his deposition a "complicated and difficult process." (*Id.*) Now, "only to attempt to avoid a Motion for Judgment on the Pleadings," the plaintiff filed the Motion for Leave. (*Id.* at 1-2.) The defendant contends that, in light of this, allowing the plaintiff to amend would "violate[] the spirit of the Federal Rules of Civil Procedure." (*Id.* at 2.)

These arguments are not convincing. While the case may have been initiated in late December 2008, the plaintiff has only been represented by counsel since late March/early April

2009, and the docket indicates that much of the time since then has been spent filing an Amended Complaint prepared by counsel (as opposed to the *pro se* Complaint) and obtaining service on the defendants. Indeed, the Initial Case Management Conference in the case was not held until January 25, 2010. (Docket No. 85.) In light of the lengthy period of time that it has taken for this case to "rev up," the length of time between the filing of the *pro se* Complaint and the filing of the Motion for Leave to Amend cannot be considered a valid basis on which to deny the Motion for Leave.

Moreover, there is no reason that the mere fact that the plaintiff has already been deposed should bar the relief sought by the plaintiff. To the extent that the defendant is arguing that the plaintiff's deposition will have to be re-taken in light of the new allegations, this certainly poses a moderate inconvenience, although not one sufficient to altogether deny the plaintiff's motion.

Finally, the defendant offers no support for the notion that filing a Motion for Leave to Amend in response to a motion challenging the sufficiency of the complaint is somehow inconsistent with "the spirit of the Federal Rules of Civil Procedure." (Docket No. 94 at 2.) Rather, in the appropriate context, filing a Motion for Leave to Amend is a fairly typical and acceptable response to such a motion, and it is not a response that is looked upon unfavorably by the courts. *See e.g. Cook v. Caldera*, 45 Fed. Appx. 371, 374 (6th Cir. 2002); *Industrial Assets, Inc. v. Capital Equipment Sales Co., Inc.*, 1997 WL 359061, *4 (6th Cir. June 26, 1997); *Stefani v. Paul Revere Life Ins.*, 156 F. Supp. 2d 809, 815 (E.D. Mich. 2001). Indeed, if the motion for leave to amend indicates that the amended complaint will effectively address the deficiencies raised by the motion to dismiss, absent other concerns, the motion for leave should be granted, and the fact that the plaintiff waited until a motion to dismiss was filed to move to amend does

9

not weigh on the court's analysis. *See e.g. Moore v. Leo Burnett Worldwide*, 2008 WL 4647814, *1-3 (E.D. Mich. Oct. 21, 2008); *Pethtel v. Washington County Sheriff's Office*, 2007 WL 2359765, *4 (S.D. Ohio Aug. 16, 2007).

Based upon the discussion above, the court will grant the plaintiff's Motion for Leave to Amend. The defendant has failed to show that undue delay, bad faith or dilatory motive are present here, and the Motion for Leave is not futile.

## II.     Motion for Judgment on the Pleadings

When the plaintiff successfully moves for leave to amend a complaint in response to a defense motion challenging the sufficiency of that complaint, the defendant's motion should be denied as moot, and, therefore, the defendant's pending Motion for Judgment on the Pleadings will be denied as moot. *See Pethtel*, 2007 WL 2359765, at *5. At the close of her response to the Motion for Leave to Amend, the defendant states that, "[i]f this Court grants plaintiff's Motion for Leave to File the Second Amended Complaint then this defendant would like leave to amend the Motion for Judgment on the Pleadings based on the new allegations alleged by the plaintiff." (Docket No. 94 Ex. 1 at 5.) The defendant concedes, however, that the sufficiency of the allegations in the Second Amended Complaint "are dealt with at length" in the futility discussion. (*Id.*)

While the court will not prohibit the defendant from filing a second Motion for Judgment on the Pleadings, the court discourages the defendant from filing a motion that simply re-hashes the arguments that the defendant raised in the futility discussion here. As discussed above, the court has concluded that the Second Amended Complaint does state a claim against defendant Dela Cruz under Section 1983, and, therefore, to the extent that the defendant would file a

10

motion that simply re-stated her arguments for why the Second Amended Complaint does not state a claim, that motion would not be favored.

## CONCLUSION

For the reasons discussed herein, the plaintiff's Motion for Leave to Amend his Complaint will be granted and defendant Dela Cruz's Motion for Judgment on the Pleadings will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge