IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KENNETH W. STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-21 |
| ) | Judge Trauger |
| MARK KING, individually and in his ) | |
| official capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the Motion to Dismiss or, in the Alternative, Revoke Pauper Status filed by defendants Mark King, Aletia Graham, Wanda Buchanan, Sharon Blakely, Brenda Harder, Carol Williams, Tammy Goodwin, Edwin Smith, and Darryl Thomas (Docket No. 102) and the plaintiff's response (Docket No. 106). For the reasons discussed below, the defendants' motion will be denied.

## BACKGROUND

In this 42 U.S.C. § 1983 action, plaintiff Kenneth W. Stewart, a Tennessee Department of Corrections inmate, has alleged that he was mistreated by the prison system's medical staff.[1] Stewart allegedly suffers from diabetes, Hepatitis C, and spinal arthritis, and he regularly receives treatment at the DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee.

---

[1] Unless otherwise noted, the facts and allegations are drawn from the parties' submissions, the Complaint (Docket No. 1), and the Second Amended Complaint (Docket No. 97).

1

This case arises from the defendants' alleged mistreatment of a venous stasis ulcer on Stewart's right leg.

In 2008, the plaintiff underwent surgery on the ulcer and received post-operative care at DSNF. He alleges that, at 3 p.m. on August 3, 2008, defendant Aletia Graham, a nurse, entered his cell to change the bandage and wound dressing on his ulcer. Graham could not locate the proper ointment for the ulcer. Despite the plaintiff's instructions on where to find the ointment, and despite his pleas that the exposed ulcer left him susceptible to infections, Graham allegedly told the plaintiff that she was leaving his cell to find more ointment.

Ten minutes later, Graham had not returned, so the plaintiff used his intercom to call defendant Claribelle Dela Cruz, the registered nurse on duty. Dela Cruz allegedly explained that Graham had gone on break. After the plaintiff repeatedly requested that someone on the medical staff re-bandage his ulcer, Dela Cruz allegedly turned off his intercom. The plaintiff alleges that the DSNF medical staff refused to treat him until four hours later. At that point, defendant Wanda Buchanan allegedly left supplies in the plaintiff's room and told him to dress his own wound. The plaintiff alleges that the defendants were retaliating against him for several administrative grievances he had previously filed regarding the quality of his care.

By August 8, 2008, Stewart's ulcer had become infected, allegedly because of the August 3 incident. The infection persisted, and on August 27, 2008, the plaintiff was admitted to the hospital because he had allegedly contracted "multiple life threatening blood infections." (Docket No. 97 ¶ 42.) Once there, the plaintiff started a six-month course of intravenous antibiotics. He alleges that, had this treatment been unsuccessful, his leg might have had to be

2

amputated. From September 2008 to December 2008, various nurses allegedly refused to properly treat the plaintiff's wound, in further retaliation for the grievances filed by the plaintiff.

Stewart, proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915, filed a handwritten *pro se* Complaint on December 31, 2008. The case was initially referred to Magistrate Judge Knowles, who appointed counsel for the plaintiff. (Docket No. 36.) The plaintiff's counsel filed an Amended Complaint on July 7, 2009. (Docket No. 62.) The plaintiff filed a Second Amended Complaint ("SAC") on March 5, 2010, in response to a Motion for Judgment on the Pleadings filed by defendant Dela Cruz. (Docket No. 97) The SAC asserts claims for violations of the plaintiff's First and Eighth Amendment rights.

The SAC alleges that, since the filing of this suit in December 2008, the defendants have continued to retaliate against the plaintiff by, among other things, refusing to care for his ulcer, withholding medications, "defiling his food trays," and writing him up for prisoner conduct violations. (Docket No. 97 ¶ 50.) The plaintiff was transferred back to the Northeast Correctional Complex in Mountain City, Tennessee in January 2009, even though he was allegedly still ill with a blood infection. He underwent additional surgery on his ulcer on March 9, 2009, and he allegedly acquired another serious blood infection because of deficient post-operative care at DSNF. The plaintiff alleges that this infection was again caused by the defendants' failure to properly change his bandages and clean his wound.

## ANALYSIS

The defendants have filed a Motion to Dismiss or, in the Alternative, Revoke Pauper Status. Their sole argument is that, because Stewart has had at least three previous lawsuits

3

dismissed for failure to state a claim, he is ineligible to proceed *in forma pauperis*. (Docket No. 103 at 2-5.)

The instant motion hinges on the application of 28 U.S.C. § 1915, which allows prisoners to file suits *in forma pauperis*. That statute, as amended by the Prison Litigation Reform Act of 1996 (the "PLRA"), excuses indigent prisoners from paying the full filing fee at the commencement of a lawsuit. Instead, they can pay a reduced up-front fee and pay the rest of the filing fee in installments. *See* 28 U.S.C. § 1915(b).

Congress passed the PLRA to stem the increasing tide of frivolous lawsuits filed by inmates, which it determined had resulted at least partly from prisoners' easy access to pauper status. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001). Accordingly, the revised § 1915 includes a so-called "three-strikes" provision:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Thus, if a prisoner has previously had three suits dismissed for failure to state a claim, the prisoner cannot file a suit *in forma pauperis* unless he or she is under "imminent danger of serious physical injury."[2]

---

[2] Of course, "the [PLRA] does not close the courthouse doors to prisoners who frequently file frivolous lawsuits; rather, it merely makes them pay the full ordinary filing fees sooner rather than later." *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998).

4

According to the defendants, Stewart has filed at least eight lawsuits that were dismissed as frivolous or were dismissed for failure to state a claim. (Docket No. 103 at 3.) The plaintiff does not dispute this fact. (Docket No. 107 at 8.) Instead, the plaintiff argues that § 1915(g) does not bar him from proceeding *in forma pauperis* because he has sufficiently alleged that he was under imminent danger of serious physical injury. The court agrees.

The Sixth Circuit has followed the approach of other circuits, holding that, to meet § 1915(g)'s imminent-danger requirement, "the threat or prison condition 'must be real and proximate' and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 Fed. Appx. 796, 797 (6th Cir. 2008) (citing *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Abdul-Akbar*, 239 F.3d at 313). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* at 797-98. A court is not required to credit allegations of imminent danger that "are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Id.* at 798 (citations and quotation marks omitted).

Here, the court has no trouble concluding that the plaintiff sufficiently alleged that he was under imminent danger of serious physical injury when he filed his initial Complaint in December 2008. At that point, he was in the middle of a six-month course of intravenous antibiotics to treat a serious infection that was allegedly caused by the defendants' misconduct. During this treatment, the plaintiff was being held in "contact isolation," (Docket No. 1 at 5), and his doctor informed him that his right leg would be amputated if the treatment was unsuccessful. (*Id.*) The plaintiff also alleged that the DSNF medical staff threatened him with continued

5

mistreatment. (*See* Docket No. 1 at 4 (alleging that a nurse stated: "[I]f you wouldn't bitch and complain and file grievances all the time maybe the nurses would want to help you, but we're not gonna help you. . . . [W]hen you have your heart attack . . . we're not gonna save you.").) Taken together, these allegations are sufficient to show that Stewart was in imminent danger of serious physical injury when he filed suit. *See Ibrahim v. District of Columbia*, 463 F.3d 3, 6-7 (D.C. Cir. 2006) ("[F]ailure to provide adequate treatment for . . . a chronic and potentially fatal disease, constitutes 'imminent danger.' . . . [W]e have no difficulty concluding that a chronic disease that could result in serious harm or even death constitutes 'serious physical injury.'").

The only remaining issue is whether December 2008, the month when Stewart filed this suit, is the relevant time frame for the imminent-danger inquiry. Specifically, the court must determine whether § 1915(g) requires a plaintiff to face imminent danger solely when the initial complaint is filed, or also when each subsequent amended complaint is filed. It is easy to imagine a situation in which imminent danger is present when a plaintiff first files suit but is absent when the plaintiff files an amended complaint a year or two later. Indeed, this might describe most instances of imminent danger.

Several circuit courts have phrased the imminent-danger requirement as applying when "the complaint" is filed. *E.g.*, *Ciarpaglini*, 352 F.3d at 330 (requiring that the plaintiff, "when he filed his complaint," faced imminent danger); *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002) (holding that "the 'imminent danger' exception only applies to danger existing at the time the complaint is filed"); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999) (discussing whether the plaintiff was "in imminent danger of serious physical injury at the time he filed his

6

Complaint"). The Sixth Circuit has adopted this phrasing. *See Rittner*, 290 Fed. Appx. at 797; *Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007) (noting that other circuits have held that the exception requires "that the danger exist at [the] time [the] complaint is filed"); *Wallace v. Amin*, 69 Fed. Appx. 667, 669 (6th Cir. 2003) ("[The plaintiff] did not allege any facts to establish that he was in imminent danger of serious physical injury when he filed the instant complaint.") This arguably means that, to proceed *in forma pauperis*, the plaintiff must continue to face imminent danger each time he or she files an amended complaint.

But these decisions do not specifically address the issue of amended complaints. Their holdings are not phrased in terms of (1) danger that existed when the initial complaint was filed versus (2) danger that existed when subsequent amended complaints were filed. Rather, they are phrased in terms of (1) danger that existed when the complaint was filed versus (2) danger that existed when the events underlying the lawsuit occurred. *See, e.g.*, *Malik*, 293 F.3d at 562 ("[W]e have not yet addressed whether the imminent danger exception requires the danger to exist when the complaint is filed or when the underlying events take place . . . ."). These decisions implicitly equate the filing of "the complaint" with the filing of the suit.

Other circuit court decisions clarify that the plaintiff must be in imminent danger when the lawsuit itself, or the *initial* complaint, is filed. *Abdul-Akbar*, 239 F.3d at 313; *Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007) (noting that the § 1915(g) exception is "concern[ed] only with the initial act of 'bring[ing]' the lawsuit") (second alteration in original); *Banos v. O'Guin*, 144 F.3d 883, 884 (5th Cir. 1998) ("The plain language of the statute leads us to conclude that a prisoner with three strikes is entitled to proceed with his action or appeal only

7

if he is in imminent danger *at the time that he seeks to file his suit in district court . . . .*") (emphasis added). Thus, the alleged imminent danger must exist when the plaintiff files the lawsuit, not necessarily when the plaintiff subsequently amends the complaint.[3]

As the Third Circuit explained in *Abdul-Akbar*, this interpretation clearly flows from the plain text of the statute:

> Putting the phrases together, the first clause of § 1915(g)[4] obviously means "a prisoner may not file a new civil complaint." In the ordinary sense of the words, this clause refers temporally to the time the new complaint is filed. The clause "unless he is in imminent danger of serious physical injury" is an exception to the preclusive effect of the statute. But the exception is cast in the present tense, not in the past tense, and the word "is" in the exception refers back to the same point in time as the first clause, i.e., the time of filing. The statute contemplates that the "imminent danger" will exist contemporaneously *with the bringing of the action*.

239 F.3d at 313 (emphasis added), *cited in Rittner*, 290 Fed. Appx. at 797.

---

[3] Decisions from the various federal district courts offer conflicting guidance on this issue. *Compare, e.g.*, *Rodriguez v. Goord*, No. 9:06-CV-1288, 2009 U.S. Dist. LEXIS 90110, at *9 (N.D.N.Y July 16, 2009) ("There is nothing in the original Complaint, nor the Amended Complaint, to suggest that Plaintiff was facing imminent harm *at the time he commenced this action . . . .*") (emphasis added); *Smith v. McCann*, No. 06-C-65, 2006 U.S. Dist. LEXIS 21980, at *6-7 (E.D. Wis. Mar. 28, 2006) ("[T]he plaintiff's allegations do not fall under the imminent danger exception to the three strikes rule, since he did not allege any real and proximate injury *when the complaint was filed* or in the amended complaint.") (emphasis added), *with Wilson v. Hubbard*, No. CIV S-07-1558, 2009 U.S. Dist. LEXIS 83218, at *5 (E.D. Cal. Sept. 10, 2009) ("At the time plaintiff *filed the operative complaint, i.e. the second amended complaint*, he clearly was under no imminent danger as he was complaining about events at a prison where he was no longer housed.") (emphasis added); *Hill v. Miller*, No. 07-cv-563, 2008 U.S. Dist. LEXIS 82502, at *5 (S.D. Ill. Oct. 16, 2008) ("Plaintiff was not in imminent danger from [the defendant's] actions *when he filed his amended complaint* in September 2008.") (emphasis added).

[4] This clause states: "In no event shall a prisoner bring a civil action" if he or she has had three previous lawsuits dismissed. 28 U.S.C. § 1915(g).

8

In sum, § 1915(g) requires only that a prisoner be under imminent danger when he or she "bring[s] a civil action." Filing an initial complaint is synonymous with "bring[ing] a civil action," under that phrase's ordinary meaning, but filing an amended complaint is not. Accordingly, the relevant inquiry is whether the alleged danger existed when the plaintiff filed his or her initial complaint.

Because the plaintiff properly alleged that he was facing imminent danger when he filed his Complaint in December 2008, § 1915(g) does not bar him from proceeding *in forma pauperis*. The defendants argue that the plaintiff's allegations of imminent danger "have not materialized," and they attach an affidavit of the Northeast Correctional Complex Health Administrator stating that the plaintiff's life is not currently in danger. (Docket No. 103 at 5; Docket No. 104, Ex. 2.) But this is irrelevant to the question of whether the plaintiff faced imminent danger when he initially filed this suit.

In any event, the court finds that the plaintiff's SAC sufficiently alleges that he continues to face imminent danger from the defendants' actions. In addition to detailing the incident that occurred on August 3, 2008, the SAC alleges that the defendants' intentionally deficient care caused another blood infection following the plaintiff's March 2009 surgery. (Docket No. 97 ¶ 56.) The plaintiff further alleges that these ongoing problems constitute "a pervasive policy and/or custom of intentionally or recklessly denying medical care" and "retaliat[ing] for [his efforts to seek] administrative or legal recourse, (*id.* ¶ 60), and he maintains that this ongoing mistreatment has caused him to suffer from an undiagnosed neurological condition and might still lead to the amputation of his leg, severe pain, increased medical problems, or death. (*See id.*

9

¶¶ 57-58.) Even taking into account the affidavit submitted by the defendants, the court cannot find that the plaintiff's allegations are "conclusory," "ridiculous," or "clearly baseless." *See Rittner*, 290 Fed. Appx. at 798.

Because the plaintiff has sufficiently alleged that he faces imminent danger of severe physical injury, he may continue to proceed *in forma pauperis*.

## **CONCLUSION**

For all of the reasons discussed above, the court will deny the defendants' Motion to Dismiss or, in the Alternative, Revoke Pauper Status.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

10