# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KENNETH W. STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-21 |
| ) | Judge Trauger |
| MARK KING, individually and in his ) | |
| official capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the plaintiff's Motion for Leave to File Third Amended Complaint (Docket No. 128), to which the defendants have responded (Docket No. 130), and the plaintiff has filed a reply in support (Docket No. 133). For the reasons discussed herein, this motion will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In this 42 U.S.C. § 1983 action, plaintiff Kenneth W. Stewart, a Tennessee Department of Corrections (TDOC) inmate, has alleged that he has been, and continues to be, mistreated by the prison system's medical staff. (Docket No. 97 at 3-10.) Stewart allegedly suffers from a myriad of serious medical conditions, including diabetes, Hepatitis C, and spinal arthritis, and he regularly receives treatment at the DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee. (*Id.*)

The plaintiff primarily alleges that the defendants, who are all associated with DSNF or TDOC, have provided improper medical care or have responded improperly to the plaintiff's

1

complaints of inadequate care. (*Id.*) The focus of the allegations of improper care have largely centered on the treatment of an ulcer on the plaintiff's right leg and subsequent blood infections.

In an April 20, 2010 opinion that denied the defendants' Motion to Dismiss the Second Amended Complaint, the court summarized the key allegations in the Second Amended Complaint and the procedural developments to that point in the litigation:

> In 2008, the plaintiff underwent surgery on the ulcer and received post-operative care at DSNF. He alleges that, at 3 p.m. on August 3, 2008, defendant Aletia Graham, a nurse, entered his cell to change the bandage and wound dressing on his ulcer. Graham could not locate the proper ointment for the ulcer. Despite the plaintiff's instructions on where to find the ointment, and despite his pleas that the exposed ulcer left him susceptible to infections, Graham allegedly told the plaintiff that she was leaving his cell to find more ointment.
>
> Ten minutes later, Graham had not returned, so the plaintiff used his intercom to call defendant Claribelle Dela Cruz[1], the registered nurse on duty. Dela Cruz allegedly explained that Graham had gone on break. After the plaintiff repeatedly requested that someone on the medical staff re-bandage his ulcer, Dela Cruz allegedly turned off his intercom. The plaintiff alleges that the DSNF medical staff refused to treat him until four hours later. At that point, defendant Wanda Buchanan allegedly left supplies in the plaintiff's room and told him to dress his own wound. The plaintiff alleges that the defendants were retaliating against him for several administrative grievances he had previously filed regarding the quality of his care.
>
> By August 8, 2008, Stewart's ulcer had become infected, allegedly because of the August 3 incident. The infection persisted, and on August 27, 2008, the plaintiff was admitted to the hospital because he had allegedly contracted "multiple life threatening blood infections." Once there, the plaintiff started a six-month course of intravenous antibiotics. He alleges that, had this treatment been unsuccessful, his leg might have had to be amputated. From September 2008 to December 2008, various nurses allegedly refused to properly treat the plaintiff's wound, in further retaliation for the grievances filed by the plaintiff.

---

[1]The parties have since settled the claims against Dela Cruz. (Docket No. 112.)

> Stewart, proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915, filed a handwritten *pro se* Complaint on December 31, 2008. The case was initially referred to Magistrate Judge Knowles, who appointed counsel for the plaintiff. The plaintiff's counsel filed an Amended Complaint on July 7, 2009. The plaintiff filed a Second Amended Complaint ("SAC") on March 5, 2010, in response to a Motion for Judgment on the Pleadings filed by defendant Dela Cruz. The SAC asserts claims for violations of the plaintiff's First and Eighth Amendment rights.
>
> The SAC alleges that, since the filing of this suit in December 2008, the defendants have continued to retaliate against the plaintiff by, among other things, refusing to care for his ulcer, withholding medications, "defiling his food trays," and writing him up for prisoner conduct violations. The plaintiff was transferred back to the Northeast Correctional Complex in Mountain City, Tennessee in January 2009, even though he was allegedly still ill with a blood infection. He underwent additional surgery on his ulcer on March 9, 2009, and he allegedly acquired another serious blood infection because of deficient post-operative care at DSNF. The plaintiff alleges that this infection was again caused by the defendants' failure to properly change his bandages and clean his wound.
>
> (Docket No. 109 at 1-3)(internal citations omitted.)

On August 19, 2010, plaintiff's appointed counsel moved to withdraw from this case, and the court granted that motion, appointing new counsel for the plaintiff on August 25, 2010. (Docket Nos. 116 and 121.) In the motion to withdraw, plaintiff's former counsel mentioned "continuing wrongful conduct by the defendants" that "may make it necessary" for the plaintiff to move for leave to amend the Complaint again "in order to bring in the additional claims and possibly additional defendants." (Docket No. 116 at 2.)

On October 6, 2010, the court entered an Agreed Order Amending the Initial Case Management Order. (Docket No. 126.) This Order stated that the parties had agreed that "any motion to amend the pleadings or join parties shall be filed in sufficient time to permit discovery necessary because of the proposed amendment to be obtained within the time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline." (*Id*. at 1-2.) The Agreed Order goes on to set

3

January 31, 2011 as the date for the completion of all fact discovery. (*Id*. at 2.)

On December 2, 2010, plaintiff's new counsel, in a letter to the Tennessee Attorney General's Office (which represents many of the defendants), informed defendants' counsel that "we will seek to amend the complaint to include factual allegations of continuing conduct in this case." (Docket No. 129 Ex. 4.) On December 30, 2010, the plaintiff's new counsel moved for leave to file the Third Amended Complaint (TAC). (Docket No. 128.)

While the TAC also focuses on the treatment of the plaintiff's wound in August 2008 and the continuing (allegedly retaliatory) failure of DSNF staff in the six months thereafter to properly treat the plaintiff's wounds and address other medical conditions, there are several key distinctions between the SAC and the TAC. Most importantly, the TAC seeks to add several additional defendants. The SAC named 11 defendants: six nurses at DSNF, the Director of Nurse Services at DSNF (Mark King), the Nursing Supervisor (Sharon Blakely), the Director of Nursing (Edwin Smith), a sergeant at DSNF (Darryl Thomas), and one physician (Mabu Nwozd) who treated the plaintiff at DSNF. (Docket No. 97 at 1-2.)

With the exception of Dela Cruz, all of these defendants are also named in the TAC. (Docket No. 129 Ex. 1.) However, the TAC proposes to add: TDOC Wardens Jennie Jobe and Roland Colson, DSNF physician Paul Alexander "who is accountable for final clinical judgments concerning patient care," TDOC Assistant Commissioner of Operations Reuben Hodge, Tim McConnell (whose role is unclear from the TAC), and the TDOC Director of Health Services and the TDOC Medical Director, who are sued as John Doe defendants. (See *id*. at 1-2.)

4

In the TAC, the plaintiff's main allegation against these (mostly) new defendants is that "Defendants Mark King, Tim McConnell, Roland Colson, Jennie Jobe, Dr. Paul C. Alexander, Edwin Smith, Reuben Hodge, John Doe #1 and John Doe #2 implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of their offending subordinates in violation of Section 1983, by failing to properly address Plaintiff's complaints regarding the denial of medical care and/or retaliatory conduct by," among others, the nurses and other DSNF employees who were all sued in the SAC. (Docket No. 129 Ex. 1 at 4.)

Additionally, the TAC adds allegations of misconduct that has occurred since the SAC was filed in March 2010. For instance, the plaintiff alleges that, on November 13, 2010, a nurse at DSNF (not a defendant here) intentionally pulled off the plaintiff's skin graft and, along with the unnamed officer on duty, laughed as the wound site "bled profusely" and "as plaintiff cried out in pain." (*Id*. at 7.) Also, the plaintiff alleges that, on June 30, 2010, he had a "diabetic attack" caused by "dangerously low" blood sugar, but no nurses responded to his increasingly urgent calls for help, and, therefore, the plaintiff "was forced to break a sprinkler head in his cell in order to get the medical attention he needed." (*Id*. at 8.)

In a few areas, the TAC also expands on allegations made in the SAC. While both the SAC and the TAC allege that, despite the clear need for specialist care, the plaintiff's persistent neurological problems have gone untreated for years, the TAC adds a similar allegation regarding the plaintiff's gall bladder and lymph nodes. (*Id*. at 8-10; Docket No. 97 at 9.) While the SAC certainly alleged that the defendants had broadly retaliated against the plaintiff for filing this lawsuit (Docket No. 97 at 7-9), in the TAC, the plaintiff lists thirteen specific areas in which,

5

he alleges, the defendants have retaliated, including by revoking outside recreation privileges, denying the plaintiff visits with family, and unreasonably delaying the plaintiff's outgoing mail to counsel. (Docket No. 129 Ex. 1 at 11-12.)

While the SAC alluded to administrative grievances that the plaintiff had filed (Docket No. 97 at 7-9), the TAC specifically alleges that the plaintiff has filed 15 grievances related to his improper treatment at DSNF. (Docket No. 129 Ex. 1 at 13.) In the TAC, the plaintiff alleges that the DSNF supervisor (King), the "chairperson of the grievance committee" (unnamed), the wardens (Jobe and Colson), and the Assistant Commissioner of Operations (Hodge) – the final level of review – have consistently rejected each of these grievances and appeals. (*Id.*)

The TAC asserts the same claims as the SAC – violations of Section 1983 arising under the First and Eighth Amendments – and seeks largely the same relief, although the TAC adds a prayer for declaratory and injunctive relief. (*Id.* at 17.)

## ANALYSIS

I. **Motion for Leave to Amend**

A. **Legal Standard**

Normally, motions for leave to amend are reviewed under the deferential standard of Federal Rule of Civil Procedure 15(a)(2), that is, the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, the district court has substantial discretion and can deny the motion for leave "based on undue delay, bad faith or dilatory motive or futility of amendment." *Pedreira v. Ky. Baptist Homes for Children*, 579 F.3d 722, 729 (6th Cir. 2009)(internal quotation omitted). The court may also deny such a motion due to the

"repeated failure [of the moving party] to cure deficiencies" or because of "undue prejudice" to the non-moving party, but, in general, the mandate that leave is to be "freely given . . . is to be heeded." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

However, "a different standard applies when a proposed amendment is so late that it would require the modification of a Rule 16 scheduling order." *Korn v. Paul Revere Life Ins. Co.*, 382 Fed. Appx. 443, 449 (6th Cir. 2010). Indeed, Federal Rule of Civil Procedure 16 permits the modification of a scheduling order only for "good cause" and with the court's consent. Fed. R. Civ. P. 16(b)(4). The heightened standard "ensure[s] that at some point both the parties and the pleadings will be fixed," only subject to modification based upon a showing of good cause. *Leffew v. Ford Motor Co.*, 258 Fed. Appx. 772, 777 (6th Cir. 2007); *Korn*, 382 Fed. Appx. at 449 (citing *Leary v. Daeschner*, 349 F.3d 888, 905-09 (6th Cir. 2003)).

Good cause is measured by the movant's "diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625-26 (6th Cir. 2002)(internal quotation omitted). That is, the plaintiff must show that "despite [his] diligence [he] could not meet the original deadline." *Shane v. Bunzl Distribution USA, Inc*., 275 Fed. Appx. 535, 536 (6th Cir. 2008)(internal quotation omitted.).

For instance, in *Inge*, the Sixth Circuit found that the district court abused its discretion by not allowing the plaintiff to file an amended complaint under Rule 16. 281 F.3d at 625-26. There, the district court had entered an order granting the defendant's motion to dismiss, and, within days, the plaintiff sought leave to amend his complaint to address the unique concerns raised by the court, but the district court denied the motion for leave. *Id.* The Sixth Circuit

7

reversed, finding that, while the motion for leave was filed well outside of the pleading deadline, the plaintiff had shown diligence/good cause by promptly moving to amend and by addressing the specific defects in the complaint that the district court noted in dismissing the case. *Id.*

In considering "good cause," the court must also consider – as one "consideration that informs" the analysis – whether the defendant would be prejudiced by the amendment and the modification of the scheduling order. *Korn*, 382 Fed. Appx. at 450. In *Inge*, the Sixth Circuit found that, because the motion for leave sought to amend pleading deficiencies – as opposed to adding "new claims or parties," – the defendant would not be prejudiced by the filing of the new complaint. 281 F.3d at 626.

However, even if no prejudice is evident, the plaintiff still "must [] explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order." *Korn*, 382 Fed. Appx. at 450. Where the plaintiff's explanation for the delay is simply insufficient or not credible, it is appropriate for the court to deny the motion for leave to amend. *Id.*; *Commerce Benefits Group v. McKesson Corp.*, 326 Fed. Appx. 369, 376 (6th Cir. 2009). If the plaintiff establishes "good cause," then the court proceeds to the more permissive Rule 15(a)(2) analysis. *Commerce Benefits*, 326 Fed. Appx. at 376.

All parties recognize that this case implicates Rule 16 and the good cause requirement. That is, the October 6, 2010 Agreed Order explicitly prohibits the filing of motions for leave to amend that do not provide sufficient time for the completion of discovery by the close of the discovery deadline, which is January 31, 2011. Because the TAC seeks to initiate litigation against several new defendants, the court clearly cannot grant the plaintiff's Motion for Leave to

8

Amend without eliminating this provision from the scheduling Order.

II.     **The Plaintiff's Position**

Inconsistently with the case law discussed above, the plaintiff primarily focuses on Rule 15, leaving his (brief) Rule 16 discussion for the conclusion of the argument. Indeed, the plaintiff argues that the none of the typical bases for denying a Rule 15(a)(2) motion apply here because: (1) the amendment is sought in good faith by counsel relatively new to this case; (2) the case is not at an "advanced stage" and the TAC would not cause a re-duplication of efforts previously expended; and (3) the amendment is necessitated by the defendants' continuing conduct and because of "newly discovered facts and evidence." (Docket No. 129 at 5-6.)

Moreover, the plaintiff argues that the defendants will suffer no undue prejudice from the TAC. (*Id*. at 7.) The plaintiff notes that only one deposition (his) has been taken in this case, and no discovery has been taken since the SAC was filed. (*Id*.) In this discovery vacuum, the TAC would not add any additional causes of action, but it would only "bolster plaintiff's existing causes of action with facts that have occurred after Plaintiff's last amendment and to state those causes of action against additional defendants." (*Id*.) Also, as noted above, plaintiff's counsel has – on at least two occasions – informed defendants' counsel of the possibility that the plaintiff would move for leave to file a TAC, further undercutting the prejudice argument. (*Id*. at 7-8.)[2]

---

[2]Under Rule 15, the parties also debate the futility of the proposed amendments. On futility, the plaintiff recites the standard for the constitutional claims at issue and concludes that, because these claims could survive a Rule 12(b)(6) Motion to Dismiss, the proposed amendment is not futile. (*Id*. at 8-10 citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). The defendants respond that "the plaintiff has not presented any evidence whatsoever that suggests that he will be successful in bringing the claims contained in the TAC." (Docket No. 130 at 9.) As the court concludes that the plaintiff has not shown "good cause" under Rule 16, it is not necessary to reach this issue.

9

The plaintiff only briefly touches on the Rule 16 "good cause" requirement. The plaintiff states that, at the time that he and his counsel agreed to the Agreed Order provision excluding this type of amendment, they "had not yet determined that an amended complaint would be necessary." (*Id*. at 3.) Additionally, the plaintiff has been "diligent in attempting to meet the standing scheduling order," but, because of the "ongoing" nature of the wrongful conduct, "it would have been impossible" for the plaintiff to have included these allegations of more recent misconduct in the SAC. (*Id*. at 10.) Also, with discovery still open and the other major deadlines (such as dispositive motions) still "months away," the plaintiff argues that the defendants will not be prejudiced by the amendment. (*Id*. at 10-11.) Finally, "by requesting injunctive relief against continuing violations in the TAC . . . Plaintiff seeks to make further amendment to the pleadings unnecessary as this matter moves forward." (*Id*.)

**III**.  **The Defendants' Position**

The defendants begin by pointing to the Agreed Order, which facially prohibits the filing of the TAC. (Docket No. 130 at 3.) The defendants point out that, not only would the pleadings and discovery deadlines have to be extended, but, with the added defendants, the February 28, 2011 and March 15, 2011 deadlines for the disclosure of expert witnesses would have to be extended as well. (*Id*. at 5.) Indeed, given the considerably expanded scope of this litigation envisioned by the TAC, it is not difficult to envision that all major deadlines, including the November 8, 2011 trial date, would have to be continued. (*See* Docket No. 127.)

The defendants also maintain that they would be substantially prejudiced by the filing of

the TAC. That is, through the TAC, the plaintiff seeks to vastly expand the scope of the lawsuit and alter its direction, focusing the attention of the suit on newly added senior TDOC officials and away from the nurses and other DSNF employees who were the central focus of the SAC. (Docket No. 130 at 3-10.) As a clear indication of this shift in focus, the defendants note that the TAC contains essentially no new allegations against the defendants originally named in the SAC. (*Id*.)

This change in focus, the defendants argue, is especially prejudicial because discovery based upon the allegations in the SAC has essentially been completed, and the TAC would not only require the additional expense of further discovery and investigation but would require the original defendants to languish while the plaintiff pursues new arguments against a bevy of new defendants. (*Id*. at 8.) Moreover, the new "allegations related to the grievance process, the prison mail system . . . and general prison conditions," among other things, "would arguably be more complicated and complex and require more discovery than the initial complaint." (*Id*. at 10.) Compounding this, the defendants claim that newly added defendant Paul Alexander, who is not a state employee, would be required to obtain counsel not familiar with this case who would presumably need time to "generally get up to speed with this case." (*Id*. at 6.)

**IV**. **Analysis**

Based upon the procedural developments in this case, the plaintiff's argument starts from a position of considerable weakness. On October 6, 2010, more than six weeks after the plaintiff obtained his new counsel, all parties agreed that no motions to amend the pleadings or to join parties would be filed unless there was sufficient time to conduct discovery on the new

11

allegations by the time of the January 31, 2011 discovery deadline, and there is clearly not time to conduct that discovery here. (Docket No. 126 at 1-2.) Unlike the cases discussed above, then, this is not a situation where, near the beginning of the litigation, the court set a deadline for amending the pleadings and the circumstances of the case did not allow the plaintiff to meet that deadline. Rather, the plaintiff here – only months ago – explicitly agreed to set this specific deadline and now seeks to avoid it.

Moreover, the plaintiff fails to show any "good cause" for this turn of events, arguing only that (1) at the time of the October 6, 2010 Order, he did not know if he would seek to amend the Complaint and (2) the TAC contains allegations of misconduct that occurred since the filing of the SAC. This first argument is singularly unpersuasive. If the plaintiff and his counsel were not sure whether they wanted to seek leave to amend, they should not have entered into an Agreed Order that so clearly circumscribed their ability to do so.[3]

On the second point, while the plaintiff makes much of the supposed recent spate of misconduct that has compelled the filing of the TAC, there is only one allegation (the pulling of the skin graft) that clearly relates to misconduct that commenced following the entry of the October 6, 2010 Order, and that allegation does not directly concern the conduct of a named defendant. Therefore, the plaintiff knew of the vast majority of the allegations contained in the TAC at the time of the October 6, 2010 Agreed Order. In light of this, the plaintiff's core

---

[3] In the August 25, 2010 Order that appointed plaintiff's current counsel, the court requested that the parties attempt to agree on any extensions to the case management order required by the appointment of new counsel but stated that it would hold a case management conference if the parties were unable to agree on a new case management order. (Docket No. 121 at 2.) No party moved for a case management conference, and, on October 5, 2010, the plaintiff moved to enter the Agreed Order discussed above. (Docket No. 124.)

12

premise that he was forced to file the TAC to shield himself from recent misconduct is simply not supported.

Also, while the TAC contains some new factual allegations, the defendants are correct that the primary effect of the TAC would be to add a series of high-level defendants, charged with supervisory liability under Section 1983. To the court, this represents a fundamental shift in the litigation and is entirely inconsistent with the parties agreement to "lock" the parties and pleadings as described in the Agreed Order. Again, the plaintiff's briefing on the "good cause" issue is devoid of support for this move.

Not only has the plaintiff failed to offer "good cause," the defendants have shown that they would be prejudiced by the TAC. There appears to be no dispute that the parties had largely completed the relatively modest amount of fact discovery that they intended to complete in this case, and, after more than two years of litigation, were preparing to move toward the dispositive motion stage. The sudden shift of direction and focus of this case promised by the TAC would, as the defendants maintain, most likely result in the claims against the original defendants languishing for an extended period of time, prejudicing the original defendants, who are entitled to an opportunity to defend these claims in a timely manner. In the absence of good cause and with clear prejudice to the defendants from the TAC, the plaintiff's motion will be denied.

## **CONCLUSION**

For the reasons discussed above, the court will deny the plaintiff's Motion for Leave to File Third Amended Complaint.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge